We're asking as our first issue that this matter be reversed and remanded for a new trial based upon the introduction of unfairly prejudicial testimony during Mr. Von Lewis's jury trial. The court also has asked us to be prepared to discuss the impact of United States v. Ammaline on its decision here. I had raised in my brief the issue of the unconstitutionality of the guidelines. The Supreme Court, of course, has since agreed with that position. Dealing first with the question of remand, during the trial of a felon-in-possession case, the police officer, while being asked a routine chain-of-custody question, which went something like, and what did you do with the gun then, smiled and turned towards the jury probably and said, well, I checked and made sure to see if it was stolen, and it was, in fact, stolen. Then slightly later in the same officer's testimony, he was again asked, did you check and see if the gun was stolen? He threw out, yes, I did, at which point Judge McKibben, recognizing and in candor to the court, of course, trial counsel did not object in either instance. Judge McKibben, sua sponte, tried to undo the harm done by the officer's gratuitous comments. He gave a ---- Why was there no trial objection? I was not trial counsel, Your Honor. I don't know. It's the heat of trial probably with a client. But you do have a district judge who recognized there was a problem and then gave a correcting instruction. Yes, that's correct. Unfortunately, the instruction the trial gave was an inappropriate instruction. It was a modified 404B instruction, or at least I have the ---- that's the closest thing it matches to. And the judge's sua sponte instruction did more to imply that Mr. Von Lewis probably had stolen the gun, but that the jury shouldn't be concerned with that particular crime, and the average lay jury, I think, we ---- He testified, did he not? No, he did not, Your Honor. Or, I'm sorry, his admissions, I guess, to the police officers came in through their testimony. Didn't he admit that he was ---- he'd fallen asleep while waiting where they found him in order to sell the gun to someone? That was the testimony of one of the officers, yes. And that he had admitted at that same time that he thought the gun was probably stolen? The actual question to him or the testimony of the officer went like, officer, did he tell you that the gun was stolen or did he indicate he knew? The officer said, I asked him if the gun was stolen. He said it could be, as in it could be. Not an admission of his knowledge that it was stolen. And, of course, the fact it was stolen is totally irrelevant to the elements of the offense charged. The average juror may in all likelihood believe that someone who steals a gun is more criminally culpable than a felon who has a gun, not being aware of the sentencing differences. So it was prejudicial. This was a case in which ---- But in order to find ---- if you're concerned that the jury may have thought that he stole the gun, which would make him more criminally culpable than mere possession, which is what he's charged with, doesn't that suggest the jury would necessarily have had to found that he possessed it one way or another? The jury did make the decision, obviously, based on their verdict that he possessed it. But the problem here is, did they reach that decision based upon unfairly prejudicial and irrelevant testimony that came in, whereas otherwise this was a case in which reasonable doubt was asserted as the defense as to whether or not Mr. Von Lewis, who was just very briefly found sleeping in a stairwell of a hotel, there was a video surveillance tape, but that tape only began after the officers already sort of had him up, and then suddenly there's something in someone's hand, one of the officer's hands, that then later is determined to be a firearm, which then later, according to the evidence, was found to be stolen. If I may, I'd like to very briefly address the amyline part of this, unless the Court has questions on ---- One question. When the officer first mentioned the gun was stolen, was there a motion to strike and to admonish the jury? No, there wasn't, Your Honor. And I've asserted this as plain error. On the question of amyline, if I may just briefly on that, the ---- this Court has said in that opinion that in that case, it was impossible to determine what the trial judge might have done had he known the guidelines were unconstitutional and, therefore, the limited remand procedure, which there are a lot of problems with that, the various dissents to amyline have pointed out some of those, not the least of which is the client's right to be present at all critical stages of a proceeding, a client's right to allocution, a client's right to counsel, which, in fact, is abridged by defendant being in custody. Mr. Von Lewis happens to be in prison in California. There's almost an impossibility of having an effective communication with him to present factors to the court. But in Mr. Von Lewis's case, we can, I think, look at factors that say, yes, the court would have done this differently had they known that the guidelines were unconstitutional. Judge McKibbin was asked at sentencing on the basis of a downward departure based upon Mr. Von Lewis's long history of alcoholism, the relatively minor nature of his past criminal conduct, although extensive, it was largely based upon alcohol-related incidents, drug-related incidents. And Judge McKibbin himself, in responding to that, said alcohol and drug dependence are not matters that should be considered on the basis of a consideration of the guidelines and a departure under 5K2.0 subpart D1. In other words, Judge McKibbin, in looking at that, said, I can't do this. It's prohibited by the guidelines. There were other factors presented during the, both the trial and the sentencing of Long. Where is this going? I mean, are you asking us to just vacate it now and then send it back for resentencing and ignore the majority opinion in Ameline that tells us that we have to at least first ask the district court? Your Honor, I have a different sentence. Actually, Your Honor. Is that where this argument is going? I'm sorry. Yes. Is that where your argument is going? It is, but it's not to disregard the holding of Ameline. Ameline said that in that case it was not possible to determine. I'm submitting to this Court that in this case it is possible to determine based on the record that the Court would have done a different sentence. Don't you have another problem here, though? Didn't the district court give your client an enhancement based on the fact that the firearm was stolen? Yes, he did. But the jury didn't find that fact, did it? That's correct. But unfortunately, as the Court noted in Ameline, that's not a constitutional error under Booker now. It would only be a constitutional error if, in fact, the guidelines were mandatory, which they're not. So that would be certainly a factor for the Court to consider in its resentencing, and there would probably be a contested fact. It's not Booker error, but it is Blakely error, right? Yes. Yes, it is. And so if the Court has relied, even if the guidelines are advisory, if the Court is relying on a fact for which the jury did not find, then we have Blakely error, which would be stronger than Booker error, and it has to go back for resentencing, doesn't it? I wouldn't argue with the Court's assessment of that. Wait a second. The Court sentenced within the statutory maximum of, what, five years? Ten years, Your Honor. Of ten years. So how does the fact of the possession of a stolen weapon increase the sentence as long as the district court sentences within zero to ten? Well, under the guidelines, there was a two-level enhancement. No, no, I understand that, but the guidelines are now advisories. Correct. And that's why the district court could sentence anywhere from zero to ten, and now the only question is, was the sentence imposed reasonable? So that's correct. And that's why I didn't want to argue against a remand suggested by Judge Bybee, but I do believe that that's no longer an argument that I can make after Booker and Amelan. Okay. All right. That's my understanding. Thank you, Your Honor. Thank you, counsel. We'll hear from the government then. Mr. Reed. May it please the Court. William Reed for the United States Attorney's Office, Las Vegas, Nevada. Bringing the first issue, addressing the first issue, the allegation or the contention that the introduction of evidence about the status of the firearm and the defendant's statement about the firearm being stolen. I would first contend or bring to the Court's attention that the issue, really the only dispute that the jury had to resolve was whether or not the defendant knowingly possessed the firearm. Ordinarily, evidence or information about the status of the firearm would not have been relevant, that is, the stolen status of the firearm would not have been relevant in this proceeding. However, Mr. Von Lewis made the statement that to the effect, I'm looking at the record, page 39, the question was asked, did you make further inquiry of Mr. Von Lewis about where the gun may have come from? And I asked him if he thought the officer's response was, I asked him if he thought maybe the gun was stolen. He said it could be stolen, yes. And it's the government's contention that that information or that statement from Mr. Von Lewis became relevant because it addresses or goes to his knowing possession of the firearm. And that's something that from the very outset of this trial was hotly contested, I would suggest to the Court. In the defendant's counsel's opening statement, she told the jurors that Mr. Von Lewis's mental state at the time because of intoxication and other matters would, was something that they were going to have to come to terms with in deciding whether or not he was even capable of knowing possession of the firearm. Certainly, his statements about this firearm and what he knew or didn't know certainly became relevant. Is it your theory that if he knew that he'd stolen the gun, that is probative evidence as to whether he possessed the gun as opposed to somebody who had planted it on him while he was asleep in a drunken stupor? Yes, Your Honor. That would be, that is the position of the government as to the relevance of that. And there was a videotape of this police encounter with Mr. Von Lewis. However, it was a surveillance video. It was not of optimum quality. It only showed the upper portion of the officers. And Mr. Von Lewis was really not, could not be seen in it. And what transpired in the video was left in some question with jurors. It had to be the officer's credibility was at issue, even though there was a video. It was highly contested as to whether or not the officers actually found the gun on Mr. Von Lewis. Therefore, his statements as to this were relevant and probative as to his knowing possession, again, which was the only real material issue. So the defense was suggesting that the officers had planted the weapon on him. Was that it? It was a very... A fluid defense? Pardon? A fluid defense. Somewhat. It was a very, it was a very, I tried the case, and it was a very dignified defense. And it wasn't one where there was direct accusation, but there was, the seed was planted that you would have to follow, believe the officer's testimony. And there was, it was done. The defense was very adequate in any little distinctions or variations between what the tape showed and what the officer said. So there was, it was not, it was by, I hate to use the word innuendo, but by suggestion that it could have been planted. And there was even, it was even questioned as to whether or not the gun could be seen in the video or not. So the defendant's statements, and the judge gave an instruction not only as to the issue of the defendants knowing that the gun was stolen and the gun, in fact, being found to be stolen, but the judge gave an instruction, or part of the instruction was that you have to find, you as jurors have to determine whether or not you even believe the defendant even made a statement. If the court, again, it was not objected to. If the court found that this was in some way error, again, the government contends it was inextricably intertwined with the rest of the evidence.   And so, again, if the court found, even if it were error, under the plain error standard, it's the government's contention that it did not affect the defendant's substantial rights in this case. But did Judge McKibben, as I recall on the transcript, in his ruling made reference he didn't use the word raised gesti, but he certainly made reference to the fact that the government was entitled to show the circumstances under which the weapon was found. And that's essentially saying the same thing, that they're entitled to tell the story of how they came upon this guy. Am I misreading the transcript? No, Your Honor. I was just looking for the exact instruction. To paraphrase, I believe he did say the defendant's not charged with any other crime. Evidence of this nature may be used by the jury to determine the defendant's knowledge and intent. I believe those paraphrasing was his language. So he did. And then, again, that instruction was also supplemented in the closing, in the jury instructions, his Honor also employed that. And that was not anything that was emphasized in the government's closing argument, any other reference to that. So if the court were to find, again, the government contends it's inextricably intertwined, but if the court were to find, is there, it did not affect the defendant's substantial rights. There was plenty of other evidence. It was relevant. The gun was found in the defendant's waistband. Yes, Your Honor. The standard review on plain error is that the error does not affect the substantial rights. We can't reverse. Now, substantial rights means that the result would have been different but for this error? That's my understanding of, yes, Your Honor. But for a test. Yes, Your Honor. And finally, unless there are any other questions about the evidentiary issue, I would just very, very briefly attempt to try to address the sentencing issue. With respect to this issue, again, it's a plain error review, and I think the question in this comes down to whether or not Mr. Von Lewis's rights were substantially affected by the sentence. As I understand the law under the Ammaline case, Judge McKibben certainly, on the one hand, an argument could be made that Judge McKibben made some very strong statements at the time of the sentencing and mentioning that Mr. Von Lewis had one of the highest criminal history categories he'd seen, I think he said in quite some time. I believe that's his language. He mentioned that I think Mr. Von Lewis in some jurisdictions could have been sentenced to as a three strikes you're out. But does it make any difference what Judge McKibben said? Aren't you arguing to the wrong people here? Under Ammaline, don't we have to send it back anyway? Your Honor, I understand the Ammaline opinion all but in the rarest of cases unless the district judge made some finding as to what or some statement as to what he would have sentenced, he or she would have sentenced the defendant to if the guidelines were not mandatory. I think that is this Court's holding. This may be a close case. I'm not prepared to say it's one of the rarest cases. He did make some gratuitous comments both ways. And your submission is what should we do? It may very well ‑‑ the record may not be sufficient for this Court to make that determination, even though there are some strong statements by the district judges. This case may be appropriate for the limited remand as provided by an Ammaline  case, unless there are any additional questions. I see my time is up. All right. Thank you. Thank you very much. Mr. Allen, I'll give you a minute on rebuttal, even though you're out of time. Your Honor, just to correct one thing, the Court asked the government what Judge McKibbin did to clear this up. He actually did not engage in any discussion with counsel. He, in fact, just simply sua sponte gave that instruction, which was a modified 404B. There was, of course, no notice that this was coming in as 404B. It didn't meet any of the qualifications of 404B. It was simply a gratuitous prejudicial comment. On the Ammaline question, again, my request is for a full ‑‑ should the Court not reverse on the 404B question, for a full remand in this case, because the record does show that Judge McKibbin would have done something different had he not been bound by the guidelines. Thank you, Your Honor. Thank you very much. The case just argued is submitted. And we'll next hear argument in United States v. Isidro, Ortiz, Sanchez.
judges: Tallman, Bybee, Bea